**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| TRACEY HORTON, | : | Case No. 3:16-cv-128 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Tracey Horton brings this case challenging the Social Security Administration's denial of her applications for benefits. She applied for a period of disability and Disability Insurance Benefits on October 15, 2012 and for Supplemental Security Income on July 2, 2014, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Emily Ruth Statum concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #6).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Statum's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since May 1, 2011. She was forty-one years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She has a high school education. *See* 20 C.F.R. §§ 404.1564(b)(2), 416.964(b)(2).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Statum that she cannot work because of physical pain. (Doc. #6, *PageID* #101). On some days, her pain is severe and she does not get out of bed. *Id*. Other days, she is able to sit and stand for a little while. *Id*. She is most comfortable when she is lying down. *Id*. Plaintiff saw a pain management doctor but did not feel like she was "really getting any help." *Id.* at 109. She was "mostly angry" when she went and did not get along with the staff. *Id*. She tried physical therapy but continued to have severe pain. *Id.* at 103. At the time of the hearing, Plaintiff was only taking Tylenol because her doctor wants her to see a pain specialist. *Id.* at 102.

Plaintiff also has anxiety, and it increases when she is in a lot of pain or "in an open setting." *Id.* at 101. Her anxiety also increases when she is talking to people and sometimes causes her to stutter and slur her speech. *Id*. She is very easily overwhelmed and has panic attacks once or twice per week. *Id.* at 112. Plaintiff also has mood swings. She explained, "Sometimes I'm really standoffish or isolate myself"; "I sometimes lash out"; "Sometimes I can be sad. Sometimes I'm just melancholy"; "I just bounce back and forth"; "I can be okay one minute and the least little thing can just set me off." *Id.* at 104.

Plaintiff has some issues with anger. *Id.* at 109. At home, her family is used to her anger, and she does not see many other people. *Id*. She tries to stay quiet rather than lashing out. *Id*. She sometimes holds it in and then cries later. *Id*. Three days a month, she stays in bed all day and cries. *Id.* at 109-10.

She sees a therapist, Audrey Berlin, every two weeks and a psychiatrist, Dr. Reynolds, once a month. *Id.* at 110. She takes several medications for her depression, anxiety, and mood swings, including Elevil, Fisbar, and Xanax. *Id.* at 102. She takes medication for high cholesterol and blood pressure and is prescribed Lamcital and Nictas to keep her from having seizures. *Id*. The side effects from the medications include feeling tired and gaining weight. *Id.* at 103.

Plaintiff testified that she tried to work in 2010 but was not able to complete training. *Id.* at 99. She was not able to concentrate and "couldn't catch on …." *Id.* at 106. She also had trouble sitting for long periods of time. *Id*.

Plaintiff reported that when she gets up in the morning, she watches the news on television and takes her medication. *Id.* at 104. She will then lie back down for a little while, get back up and try to "pick up around the house a little bit," and then lie down again. *Id*. She spends most of the day lying down, watching television. *Id.* at 104-05.

Plaintiff lives with her son who is twenty years old. *Id.* at 97. She has a driver's license but does not drive because she does not own a vehicle. *Id.* at 98. She does not leave her house very often, and she never leaves by herself. *Id.* at 107. Her daughter goes to the grocery store with her because she needs help carrying groceries. *Id*. She can carry a gallon of milk but nothing heavier. *Id*. She estimated that she can stand for fifteen to twenty minutes at one time and sit for thirty minutes. *Id.* at 108.

### B. Dr. Reynolds' Opinions

On June 28, 2013, Dr. Reynolds, Plaintiff's treating psychiatrist, completed a mental impairment questionnaire. *Id.* at 545-47. He reported, "She notes problems maintaining pace and persistence as she is distracted by the pain and with the depression. She lacks energy, motivation [and] interest to follow through." *Id.* at 546. Although Plaintiff's attendance to treatment sessions was affected by her inability to obtain transportation, she made "small gains." *Id.* at 547. Dr. Reynolds opined, "She becomes easily stressed and overwhelmed. When this happens her anxiety [and] depression increase. She has difficulty coping with the stress of her daily routine [and] family." *Id*.

Dr. Reynolds completed a second mental impairment questionnaire on June 17, 2014. *Id.* at 718-21. He diagnosed Plaintiff with Mood Disorder not otherwise specified (NOS) and Adjustment Disorder with anxiety and assigned a Global Assessment of

Functioning (GAF) score of sixty. *Id.* at 718. Dr. Reynolds identified the following as Plaintiff's symptoms: mood disturbances, anhedonia, feelings of worthlessness, social withdrawal or isolation, decreased energy, and generalized persistent disturbance. *Id.* at 718. Plaintiff also reported problems with memory, motivation, and focus. *Id.* at 719. Dr. Reynolds indicated she stutters when she is anxious and it upsets her. *Id*. Additionally, her mood is depressed and anxious; her speech is of a hesitant rate; and she is easily overwhelmed, especially when she does paperwork or is in groups of people. *Id*. Dr. Reynolds noted that Plaintiff has tried various psychotropic medications along with cognitive and behavioral therapy. *Id*. He opined that her prognosis is "[g]uarded due to the chronicity of her symptoms." *Id*.

Dr. Reynolds cogently explained that Plaintiff's mental impairments exacerbated her experience of pain.

> Depression can magnify pain. It makes it more difficult to cope with everyday living. With chronic pain she has increased anxiety, irritability [and] agitation. She is constantly stressed [and] tense. Some of the overlap between chronic pain [and] depression can be explained by biology. Depression [and] chronic pain share some of the same neurotransmitters and some of the nerve pathways. Depression then magnifies pain [and] reduces her coping skills.

*Id.*

Dr. Reynolds opined that Plaintiff had marked episodes of deterioration or decompensation in work and marked limitations in her ability to understand, remember, and carry out detailed instructions. *Id.* at 720. She could maintain attention and concentration for extended periods and make simple work related decisions. *Id*. Further,

5

she has moderate restrictions in many areas: daily activities; social functioning; concentration, persistence, or pace; ability to remember locations and work-like procedures; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others. *Id.* at 720-21.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or

6

disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.  The ALJ's Decision

As noted previously, it fell to ALJ Statum to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five sequential

steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

She reached the following main conclusions:

> Step 1: Plaintiff has not engaged in substantial gainful employment since May 1, 2011.
>
> Step 2: She has the severe impairments of sacroiliitis, lumbar strain/sprain, lumbar disc, moderate circumferential L5-Sl spondylosis, and degenerative disc disease with disc protrusion at L5/S1..
>
> Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "less than the full range of light work …: lift and[/]or carry 20 pounds occasionally, and 10 pounds frequently; sit about 6 hours in an 8[-]hour workday; stand and/or walk about 6 hours in an 8[-]hour workday; no limitations in pushing and/or pulling; occasionally climb ladders, ropes or scaffolds; and occasionally stoop and crouch."
>
> Step 4: She is unable to perform any of her past relevant work.
>
> Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 71-86). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 86.

## V. <u>Discussion</u>

Plaintiff contends that the ALJ erred in her evaluation of Plaintiff's treating doctor's opinion, in finding that she does not have a severe mental impairment, and in

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

8

relying on the assessment of a State agency record-reviewing physician from a previous application. The Commissioner maintains that substantial evidence supports both the ALJ's step-two analysis and the ALJ's evaluation of the medical opinions.

### A. Dr. Reynolds

ALJ Statum determined that Dr. Reynolds' opinions was not entitled to controlling or deferential weight and instead, assigned it "little weight." (Doc. #6, *PageID* #s 75-76).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

ALJ Statum failed to follow the Regulations: Her analysis of Dr. Reynolds' opinion under the treating physician rule is both incomplete and unsupported by substantial evidence, and she neglected to address the factors as required.

The ALJ found that Dr. Reynolds' opinion was "conclusory and unsupported by objective signs and findings in the preponderance of the record. Specifically, Dr. Reynolds' assessment is unsupported by objective findings in his treatment notes." (Doc. #6, *PageID* #76).

ALJ Statum addressed the first condition of the treating physician rule—whether Dr. Reynolds' opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. She found that Dr. Reynolds' treatment notes "primarily document [Plaintiff's] subjective complaints … Objectively, Dr. Reynolds indicated only some depressed, anxious, angry, and frustrated moods, and only on some occasions. Dr. Reynolds and Ms. Berlin otherwise documented **euthymic** moods, a congruent affect, cooperative and appropriate behavior, a relaxed and casual presentation, normal speech, normal thought content, good insight, intact judgment, full orientation, and no evidence

of hallucinations, delusions or suicidal ideation on many occasions." *Id.* at 76 (emphasis in original) (citing Exhibits 7F and 10F).

The ALJ's summary of Dr. Reynolds' and Ms. Berlin's treatment notes—particularly as it relates to the most recent treatment in the record—is misleading. Between April 24, 2013 and May 28, 2014, Ms. Berlin saw Plaintiff eighteen times. *Id.* at 633-712. She indicated Plaintiff's mood was depressed at *every* appointment. Further, Plaintiff was frustrated at twelve of the appointments and anxious at fourteen. During the same time period, Dr. Reynolds saw Plaintiff eight times. *Id.* He noted Plaintiff's mood was euthymic at only one appointment. He indicated her mood was depressed at five appointments and anxious at two. Additionally, there is no indication that the observations emphasized by the ALJ—such as cooperative and appropriate behavior, a relaxed and casual presentation, full orientation, and no evidence of hallucinations, delusions or suicidal ideation—are inconsistent with Dr. Reynolds' opinion.

The ALJ's emphasis on some findings over others ignores evidence supporting Dr. Reynolds' opinions. This constitutes error: "a substantiality of evidence evaluation does not permit a selective reading of the record. 'Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'" *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting, in part, *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted). Additionally, "For a medical opinion to be well-supported by medically

11

acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence." Soc. Sec. R. 96-2p, 1996 WL 374188, at *2. ALJ Statum failed to acknowledge that substantial evidence in the record supports Dr. Reynolds' opinion.

Further, the ALJ's analysis ignores the realities of mental illness. It can be considerably more difficult to substantiate psychiatric impairments by objective laboratory testing:

> [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen,* 874 F.2d 1116, 1121 (6th Cir. 1989) (citing *Poulin v. Bowen,* 817 F.2d 865, 873-74 (D.C. Cir. 1987), quoting *Lebus v. Harris,* F.Supp. 56, 60 (N.D. Cal. 1981)).

In this case, Dr. Reynolds did identify his diagnoses and observations, and there are no reasons to question his diagnostic techniques. In his assessment, he noted that Plaintiff's chronic pain caused increased anxiety, irritability, and agitation and reduced coping skills. (Doc. #6, *PageID* #719). Additionally, her speech is at a hesitant rate, she is easily overwhelmed, and her interest in activities is decreased. *Id.* He identified the medication he prescribed and indicated her prognosis was guarded because of the chronicity of her symptoms. *Id.*

Dr. Reynolds' and Ms. Berlin's treatment notes support his assessment. For example, in June and August 2011, Ms. Berlin observed that Plaintiff was sad, tearful, depressed, anxious, and frustrated. *Id*. at 605-14. By January 2012, Plaintiff had not improved: Ms. Berlin noted she was sad, depressed, anxious, angry, and frustrated. *Id*. at 581. In June 2012, Dr. Reynolds noted that Plaintiff had been stressed with more anxiety and was thinking about the anniversary of her parents' deaths. He noted that she had "some prominent perioral tremor" when she was anxious and tearful. *Id*. at 567. Ms. Berlin noted in April 2013 that Plaintiff was depressed, frustrated, withdrawn, and lethargic, and "seems to have decompensated since she was last seen." *Id*. at 642. By November 2013, Plaintiff reported that she was "doing better" but this did not mean Plaintiff was out of the woods yet because Ms. Berlin indicated her mood remained depressed. *Id*. at 695. And, Plaintiff reported in February 2014 that she was "doing 'awful,'" and Dr. Reynolds observed that she was mildly depressed and anxious. *Id.* at 691.

Treatment notes from some of Plaintiff's other doctors also support Dr. Reynolds' opinion. Dr. Venkatesh, Plaintiff's treating physician, noted that Plaintiff was nervous/anxious at four appointments between April 2012 and May 2014. *Id*. at 540, 667, 672, 676. Dr. Amol Soin, the medical director at the Ohio Pain Clinic, treated Plaintiff for severe pain and anxiety. In September 2009, he noted that Plaintiff had anxiety and panic attacks and prescribed Ativan. *Id*. at 512. His notes from March 2010 indicate he continued to prescribe Ativan for anxiety. *Id*. at 506. In April 2011, Dr. Soin

indicated that Plaintiff was diagnosed with adjustment disorder with anxiety. *Id*. at 651. He also noted in August 2011 that she suffers from anxiety and panic attacks. *Id*. at 646.

The ALJ did not address the second condition of the treating physician rule—whether the opinion is not inconsistent with the other substantial evidence in the record. This left her consideration of the treating physician rule incomplete. Yet, even if Dr. Reynolds' opinion is not entitled to controlling weight, the ALJ's evaluation is not complete: "[A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source …." *Wilson,* 378 F.3d 541, 544 (citing 20 C.F.R. § 404.1527(d)(2)). "However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4).

ALJ Statum overlooked or ignored several factors. She failed to recognize Plaintiff's lengthy and continuous treatment relationship with Dr. Reynolds and Ms. Berlin. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Plaintiff first saw Ms. Berlin in May 2011 and first saw Dr. Reynolds in June 2011. (Doc. #6, *PageID* #s 624-25, 718). They have consistently treated her. Dr. Reynolds saw Plaintiff at least five times in 2011, and six times a year in 2012, 2013, and 2014. Ms. Berlin saw her at least twelve times a year

14

in 2011 and 2012, fourteen times in 2013, and five times in 2014. *Id.* at 548-644, 684-717, 752-53.

ALJ Statum also failed to recognize that Dr. Reynolds specializes in psychiatry. *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

The ALJ also failed to acknowledge the support Dr. Reynolds provided in his opinion. Dr. Reynolds clearly explained that depression magnifies pain and reduces coping skills, and he identified the science upon which he relied: "Some of the overlap between chronic pain [and] depression can be explained by biology. Depression [and] chronic pain share some of the same neurotransmitters and some of the nerve pathways. Depression then magnifies pain [and] reduces her coping skills." *Id.* at 719. The ALJ does not appear to consider—or even recognize—Dr. Reynolds' cogent explanations. *See* 20 C.F.R. § 404.1527(d)(3). ("The better explanation a source provides for an opinion, the more weight we will give that opinion....").

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own Regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

15

right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of §405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and

to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Tracey Horton was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

Date: June 28, 2017
*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).